# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**RICHARD GODINEZ,**

       **Plaintiff,**

**vs.**                                                  **No. 03cv0554 DJS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Godinez') Motion to Reverse and Remand for a Rehearing **[Doc. No. 11]**, filed November 24, 2003, and fully briefed on January 21, 2004. On January 24, 2003, the Commissioner of Social Security issued a final decision denying Godinez' application for disability insurance benefits and supplemental security income benefits. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

## I. Factual and Procedural Background

Godinez, now thirty-seven years old, filed his application for disability insurance benefits and supplemental security income on December 27, 2000, alleging disability since November 15, 1998, due to arthritis in the knees and shoulders. Tr. 102. Godinez has a general equivalency diploma (GED) and attended truck driving school. Godinez has past relevant work as a tractor trailer driver and mechanic. Tr. 103. On January 24, 2003, the Commissioner's Administrative

Law Judge (ALJ) denied benefits, finding that Godinez' impairments were severe but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. Tr. 16. The ALJ further found Godinez retained the residual functional capacity (RFC) to perform a range of medium exertional level work activity with additional limitations. Tr. 17. The ALJ found Godinez would be limited to lifting 50 pounds occasionally and 20 pounds frequently, could walk or stand a total of 6 hours in an 8-hour workday, may require a sit-or-stand option, and he should avoid reaching overhead. Tr. 20, 143. As to his credibility, the ALJ found Godinez' testimony was not wholly credible. Tr. 17. Godinez filed a Request for Review of the decision by the Appeals Council. On April 28, 2003, the Appeals Council denied Godinez' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Godinez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III. Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Godinez makes the following arguments: (1) the ALJ's reliance on the vocational expert (VE) testimony that contradicted the Dictionary of Occupational Titles was contrary to the evidence and the law; (2) the ALJ's consideration of his nonexertional impairments was inadequate and contrary to law, and (3) the ALJ's credibility finding was contrary to law. The Court will first address the third issue.

## A. Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

Godinez contends "[t]he ALJ found that [his] allegation of disability due to pain was not supported by the medical evidence." Pl.'s Mem. at 7. Godinez claims this finding is not adequate "because the lack of objective medical evidence to support all of the subjective complaints is an insufficient reason to disbelieve a claimant." *Id.* Additionally, Godinez argues the ALJ "must consider what pain level [he] would be at if he were working, and not his pain level at rest, at home." *Id.*

A review of the ALJ's decision indicates the ALJ considered the fact that Godinez "had not seen a physician until about a week prior to Dr. Toner's examination." Tr. 14. The ALJ also relied on statements Godinez made to Dr. Toner. The ALJ noted:

> The claimant alleges complete disability due to chronic pain in his back, hips, and knees. Eugene Toner, M.D., completed a consultative examination of Mr. Godinez on February 10, 2001 (Exhibit 1F). Mr. Godinez reported that he had not seen a physician until about one week prior to Dr. Toner's examination.
>
> Mr. Godinez told Dr. Toner that he spent his days walking and getting exercise. He lived alone and heated his home with wood. This required the claimant to gather and chop wood for his fire about once a week. He cleaned his house, did his laundry and cooked his food.
>
> Mr. Godinez also told Dr. Toner that he could only stand for half an hour, sit for an hour, and could only walk 20 minutes at a time. He felt he could lift 30 pounds, bend, and he could drive a vehicle for about 30 minutes at a time.

Tr. 14. The ALJ then set forth a summary of the medical record, considered the medication prescribed for the pain, and Godinez' subjective complaints. For example, citing to the September 14, 2001 visit to University Hospital, the ALJ noted, "Mr. Godinez reported that he felt his symptoms were 'fairly well controlled' with exercise and Naprosyn 500 mg bid. for pain." Tr. 15. The record supports this statement. At that visit, the physician noted, "The patient says his symptoms are fairly well controlled with exercise as well as Naprosyn 500 mg twice a day. The patient is not interested in taking any other medication at this time." Tr. 182. The physician also noted, "The patient has lost nine pounds in the past four months with increasing exercise and watching his diet." *Id.* Having considered all the objective evidence and Godinez' subjective complaints, the ALJ concluded:

> Mr. Godinez consistently reported pain through the chronology of the medical record. He described the 'arthritis' pain as chronic bilateral knee pain, left greater than the right, back pain, shoulder pain, and elbow pain that he [has had] for as long as he could remember, but that had grown worse since about 1995 (Exhibit 9F, p. 16). However, he first sought medical attention only one week prior to his visit with Dr. Toner, on February 10, 2001

5

> (Exhibit 1F, p.1). His pain remained unchanged and severe despite treatment with medication
>
> * * * * * * * * * *
>
> In making this assessment (RFC), all symptoms including pain must be considered as well as the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence from acceptable medical sources reflecting judgments about the nature and severity of the impairment and resulting limitations must also be considered. (20 CFR §§ 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-6p).
>
> The claimant testified that he had to stop chopping wood to heat his home in August 2001 due to pain and his limitations. His ability to function was diminishing by Mr. Godinez' report. He continued to attempt exercise, but could only walk 20 minutes. He could sit or stand for 30 minutes each and could only climb stairs occasionally. He performed housework, but that activity took progressively longer for him to accomplish. He could drive, but only distances of 30 miles to visit friends in a vehicle with an automatic transmission, because he would be unable to shift a manual transmission.
>
> While the claimant's testimony appeared to be somewhat credible at the hearing, the medical record does not support the extent of limitations alleged by Mr. Godinez. He had lost a total of 25-30 pounds by June 13, 2002, since he began medical treatment in March 2002 (Exhibit 9F, p., 16). Although he consistently reported 'arthritis' pain, clinical testing done in July 2002 (Exhibit 9F) systematically eliminated the possibility of arthritis in Mr. Godinez' hands, knees, and hips. Further testing showed ostopenia was not present, despite that diagnosis from x-rays. And, the claimant's sedimentation rate and rheumatoid factor were not suggestive of arthritic problems.
>
> So, even though the Administrative Law Judge does find limitations secondary to pain, it is difficult to accept Mr. Godinez' claims in light of the multitude of exhibits contradicting his testimony. Mr. Godinez' allegation of complete disability secondary to chronic pain is not supported by the medical record and is therefore not wholly credible.

Tr. 16-17. The ALJ considered other factors besides the lack of objective medical evidence to find that Godinez' was not wholly credible to the extent of limitations he alleged. The Court has meticulously reviewed the record and finds it supports the ALJ's finding. Accordingly, the Court finds that the ALJ's credibility determination is supported by substantial evidence and will not be disturbed.

## B. Nonexertional Impairments

Godinez contends the ALJ must consider nonexertional impairments in his RFC assessment. Godinez claims the ALJ did not consider his complaints of pain and the side effects from his medication. Specifically, Godinez claims he takes Elavil, Naproxen,[1] Amitriptyline, and Cimetidine. Pl.'s Mem. at 5. Although Godinez lists both Elavil and Amitriptyline as two separate medications, they are the same, one being a brand name and the other generic. Godinez contends Elavil makes him "feel groggy during the day." Pl.'s Mem. at 5. However, on September 14, 2001, Godinez reported to his treating physician that he "tried Elavil once but said he was unable to sleep after taking it and did not try it any more." Tr. 182. On December 21, 2001, Godinez also reported Elavil had not helped him and thus he was not taking it. Tr. 177-178. The attending physician also noted, "I have tried the patient on Elavil but was not able to sleep when taken at night and during the day he says it makes him feel 'weird.'" Tr. 178.

Godinez also claims the pain medication made him feel goofy and groggy. Tr. 36. Godinez cites to his testimony to support this claim. However, Godinez fails to cite to any other part of the record to support his claim that he suffered side effects from the Naprosyn. As the Commissioner points out, "the medical evidence was largely devoid of such complaints." Def.'s Resp. at 5. The Court reviewed the record and found the following medical notations regarding Godinez' use of Naprosyn.

On December 21, 2001, the physician noted, "The patient has **intermittently** used Naprosyn which has helped, but **does not use this on a regular basis** as he does not want to get

---

[1] The Commissioner points out that Godinez is actually taking Naprosyn not Naproxen. Def.'s Resp. at 5, n. 1. In his reply, Godinez does not dispute the Commissioner's statement.

7

addicted to this medication." *Id.* (emphasis added). The physician instructed Godinez "that he can take Naprosyn without the chance of becoming addicted to it; he should take this around-the-clock." Tr. 179. On May 30, 2001, Godinez reported to the orthopedist that he took the Naprosyn "**only periodically, three times in the past two months** to be exact which he states has provided no relief." Tr. 190 (emphasis added). The orthopedist noted, "The patient was instructed to take his Naprosyn twice a day regularly, to see if he can get improvement with that **instead of just taking it every few weeks**." Tr. 191. Significantly, the orthopedist noted "It was discussed with the patient the possibility of a total joint arthoplasty in the future, although this does not seem to be in the near future given his age, **his mildness of his symptoms at this point**, and the patient stating that **surgery was not an option at this time nor in the future per him**." *Id.* (emphasis added). The Court found <u>no</u> notations by Godinez' health care providers documenting his complaints of side effects due to Naprosyn. The only other notation concerning side effects to medications occurred on June 5, 2001. At that time, the physician noted, "The patient states he is tolerating the gemfibrozil without problems. Initially, he felt slightly dizzy on that, but that is resolved and is now having no problems." Tr. 187. Gemfibrozil is indicated for the treatment of adult patients with very high elevations of serum tryglyceride levels. *Physicians' Desk Reference* 2297 (53d ed. 1999). Accordingly, the Court finds Godinez' argument that side effects from his medications caused nonexertional limitations which he claims the ALJ failed to consider in his RFC assessment lacks merit and will be dismissed.[2]

---

[2] The Court addressed the ALJ's consideration of Godinez' complaints of pain under its discussion regarding the ALJ's credibility determination and will not do so again.

**C. Vocational Testimony**

Godinez contends the ALJ failed to follow Social Security Ruling 00-4p because he failed to ask the VE about any testimony that conflicted with the Dictionary of Occupational Titles (DOT). Pl.'s Mem. at 4. According to Godinez, the ALJ adopted the VE's testimony that he could perform the jobs of electronics worker and assembler of printed products. Godinez then argues that, in the DOT, the job of electronic worker requires frequent reaching and the job of assembler requires constant reaching. Accordingly, Godinez argues he cannot perform either of these jobs.

However, as the Commissioner points out, the ALJ restricted overhead reaching in his RFC finding and in his hypothetical question. For the jobs in question, the DOT does not differentiate reaching. Although Godinez claims he testified that "ordinary reaching" bothers him as well, the ALJ did not accept this limitation and did not present it in his hypothetical to the ALJ. Hypothetical questions need not take into account all of claimant's alleged impairments. Hypothetical questions to a VE are proper when they take into account the impairments substantiated by the medical reports and the impairments accepted as true by the ALJ. *See Gay v. Sullivan,* 986 F.2d 1336, 1340-41 (10th Cir. 1993); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). The VE was present at the administrative hearing and testified she had reviewed Godinez' background. Tr. 56. The ALJ posed his hypothetical and properly relied on the VE's testimony that Godinez could perform the jobs in question.

Finally, Godinez contends the ALJ had a duty to question the VE about any conflict between the VE testimony and the DOT. Social Security Ruling 00-4p, 2000 WL 1898704, states, "When a VE . . . provides evidence about the requirements of a job or occupation, the

[ALJ] has an affirmative responsibility to ask about any possible conflict between that [VE] evidence and information provided in the DOT." *Id.* at *4. "If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict." *Id.* The transcript of the VE's testimony does not reveal any conflict that would have triggered the need for the ALJ to question the VE about the DOT. Moreover, in *Gibbons v. Barnhart*, 85 Fed.Appx. 88 (10th Cir. Dec. 18, 2003), the Tenth Circuit agreed with the reasoning applied by the Fifth Circuit in *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), in addressing this issue. The Tenth Circuit quoted the following passage in *Carey*:

> [t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, . . . the ALJ may rely upon the vocational expert's testimony provided the record reflects an adequate basis for doing so . . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or groups of jobs.

*Gibbons,* 85 Fed.Appx. at *4 (quoting *Carey*, 230 F.3d at 146-47). In this case, were the Court to find an implied or indirect conflict, the Court finds the ALJ properly relied on the VE's testimony and substantial evidence supports the ALJ's finding that Godinez could perform the job of electronics worker and assembler of printed products .

## D.  Conclusion

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court is

satisfied that substantial evidence supports the ALJ's RFC determination and his finding of nondisability. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**